[Cite as *State v. Wolfe*, 2020-Ohio-5501.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, Jr. J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2020CA00021 |
| STEPHEN H. WOLFE | : | |
| | : | |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Criminal appeal from the Court of Common
Pleas, Case No.19CR730

JUDGMENT:                              Affirmed in part; Reversed in part and
Remanded

DATE OF JUDGMENT ENTRY:         November 30, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

WILLIAM C. HAYES                      JAMES A. ANZELMO
PROSECUTING ATTORNEY            446 Howland Drive
BY: PAULA M. SAWYERS             Gahanna, OH 43230
ASSISTANT PROSECUTOR
20 S. Second Street, 4th Floor
Newark, OH 43055

*Wise, John, J.*

{¶1} Defendant-Appellant Stephen H. Wolfe appeals his convictions and sentences after a negotiated guilty plea in the Licking County Court of Common Pleas.

### STATEMENT OF THE FACTS AND CASE

{¶2} On September 16, 2019, Trooper Matthew Stoffer of the Ohio State Highway Patrol attempted to make a traffic stop of a 2013 Peterbuilt Semi-truck on State Route 30 in Wyandot County, Ohio for failing to have license plates or a PUCO number displayed on the commercial vehicle. (T. at 9-10). The vehicle, later determined to be operated by Appellant Stephen Wolfe, did not stop. (T. at 10). The vehicle reached speeds of 100 mph on Route 30 entering into Crawford County, back into Wyandot County, before proceeding South on State Route 23 into Marion County and Delaware County. *Id.* The vehicle avoided stop strips deployed and ignored multiple cruisers chasing with lights and sirens activated attempting to stop the vehicle. *Id.* Appellant steered his vehicle toward a Trooper placing stop strips on the roadway forcing the Trooper to move out of the way and injuring himself in the process. *Id.*

{¶3} The semi-truck collided with a 1989 Jeep Comanche operated by Michael Slagle, Jr. on Ohio 16 near Cedar Street in Newark, Licking County, Ohio. *Id.* As a result of the collision, Slagle suffered serious physical harm requiring his transfer by life flight to Grant Hospital. (T. at 10-11). The semi-truck reached speeds of 105 mph in Licking County. (T. at 11). The vehicle continued through Muskingum County and into Coshocton County. *Id.* Appellant abandoned the vehicle and was arrested at 1697 Evergreen Park Drive. *Id.* The chase occurred for more than fifty miles in total. *Id.*

{¶4} Appellant pled guilty to assault on a peace officer, a fourth degree felony, in violation of R.C. §2903.13(A)(C)(5); felonious assault, a second degree felony, in violation of R.C. §2903.11; failure to comply, a third degree felony, in violation of R.C. §2921.331; receiving stolen property, a fourth degree felony, in violation of R.C. §2913.51; and failure to stop after an accident, a fourth degree felony, in violation of R.C. §4549.02. (T. at 9).

{¶5} Appellant's trial counsel argued that the assault on a peace officer offense should merge with the offense of failure to comply. (T. at 18). Trial counsel also argued for merger of the offenses of felonious assault of the motorist, failure to comply, and failure to stop after an accident. (T. at 18). The trial court declined to merge the offenses, and Appellant objected. (T. at 24, 32).

{¶6} During the sentencing hearing, Appellant expressed remorse for his conduct. (T. at 24). His trial counsel noted that Appellant was suffering from mental health and drug addiction issues because of injuries he sustained serving in Iraq while in the armed forces. (T. at 20-21). Trial counsel noted that Appellant's life "changes dramatically" after he came home from Iraq. (T. at 19). Trial counsel further mentioned that Appellant was not acting with "malice aforethought," but was merely trying to get to his mother's home. (T. at 19, 21). Thus, Appellant contended that his prison sentences should be run concurrent. (T. at 32).

{¶7} The court ordered Appellant to serve consecutive prison sentences. The court noted that Appellant completed a seven-month prison term, and that he has a pending charge from an incident in Kalamazoo, Michigan. (T. at 29-20).

{¶8} Specifically, the court ordered Appellant to serve: one (1) year in prison for the assault on a peace officer offense; two (2) years in prison for the failure to comply

offense; nine (9) months in prison for the receiving stolen property offense; and nine (9) months in prison for the failure to stop after an accident offense. For the felonious assault offense, the court ordered Appellant to serve five (5) to seven and one-half (7 ½ ) years in prison. (T. at 30).

{¶9} Appellant now appeals, raising the following assignments of error:

**ASSIGNMENTS OF ERROR**

{¶10} "I. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

{¶11} "II. STEPHEN H. WOLFE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶12} "III. THE TRIAL COURT SENTENCED WOLFE TO AN INDEFINITE PRISON TERM IN CONTRAVENTION OF THE SENTENCING STATUTES, IN VIOLATION OF WOLFE'S RIGHTS TO DUE PROCESS.

{¶13} "IV. THE TRIAL COURT ERRED BY FAILING TO MERGE WOLFE'S OFFENSES FOR ALL BUT THE RECEIVING STOLEN PROPERTY COUNT.

{¶14} "V. THE TRIAL COURT UNLAWFULLY ORDERED WOLFE TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**I.**

{¶15} In his First Assignment of Error, Appellant argues that the Reagan Tokes Law, specifically the presumptive release feature of R.C. §2967.271, is unconstitutional.

{¶16} R.C. §2967.271 provides in pertinent part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of

physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall

be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution  for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶17} Appellant herein argues the portions of the statute which allow the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions.

{¶18} Appellant, however, has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

{¶19} This Court recently analyzed an appeal of a sentence imposed pursuant to the Reagan Tokes Act. *See State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227. In *Downward*, the appellant entered a plea of guilty to robbery, a second-degree felony, and assault on a peace officer, a fourth-degree felony. The trial court sentenced the appellant on September 23, 2019, pursuant to the Reagan Tokes Act. On the robbery conviction, the trial court sentenced the appellant to a stated minimum prison term of eight years. The trial court sentenced the appellant to a stated prison term

of twelve months for assault on a peace officer. The trial court ordered the sentences to be served consecutively, for an aggregate minimum prison term of nine years and an aggregate indefinite maximum prison term of thirteen years. *Id.* at ¶ 2. The appellant appealed the sentence, arguing the Reagan Tokes Act violated his constitutional rights to due process and trial by jury. *Id.* at ¶ 5.

{¶20} In *Downward*, we first discussed the legal concept of "ripeness for review":

The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff.

Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. *Id.* at 89, 694 N.E.2d at 460.

**{¶21}** *Downard*, at ¶¶ 8-9.

**{¶22}** We next found the Appellant's appeal of the constitutionality of the Reagan Tokes Act was not ripe for review:

> * * * [W]hile R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his nine year minimum sentence and potentially continue his incarceration to a term not exceeding thirteen years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review." *Downard*, at ¶ 11. We determined the appropriate action for the Appellant "to challenge the constitutionality of the presumptive release portions of R.C. 2967.271 is by filing a writ of habeas corpus if he is not released at the conclusion of his eight year minimum term of incarceration.

**{¶23}** *Downard*, at ¶ 12.

**{¶24}** We find that the issues presented in the current case are the same as those raised in *Downard*. On January 24, 2020, the trial court sentenced Appellant to serve a stated prison year of one year on Count 1, five to seven and one-half years on Count 2, two years Count 3, nine months on Count 4, and nine months on Count 5 at the Orient Reception Center. All counts were ordered to run consecutively for nine and one-half (9) years to twelve (12) years. (T. at 30).

**{¶25}** There is no dispute that Appellant has not yet been subject to R.C. §2967.271, which allows the DRC to rebut the presumption that Appellant will be released

after serving his minimum sentence of nine and one-half years and potentially continuing his incarceration to a term not exceeding twelve years.

{¶26} We therefore find that the constitutional issues argued by Appellant, pursuant to *Downard*, are not yet ripe for review.

{¶27} *See, also, State v. Clark,* 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631 (constitutionality of Reagan Tokes Law not ripe for review where defendant was not yet subject to presumptive release provisions).

{¶28} Appellant's First Assignment of Error is overruled.

## II.

{¶29} In his Second Assignment of Error, Appellant contends that he was denied effective assistance of trial counsel because trial counsel failed to challenge the constitutionality of the Reagan Tokes law in the trial court.

{¶30} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* U.S.__, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335(June 15, 2020).

{¶31} In the instant case, because the Reagan Tokes Law is not yet ripe for review, the trial court did not err, plain or otherwise, in sentencing Appellant. As the statute is not ripe for review, there is no reasonable probability that, but for counsel's failure to challenge the constitutionality of the Reagan Tokes Law, the result of the proceeding would have been different.

{¶32} Appellant's Second Assignment of Error is overruled.

**III.**

{¶33} In his Third Assignment of Error, Appellant argues that the trial court failed to comply with R.C. §2929.19(B)(2)(c) because the court did not provide the requisite notices at his sentencing hearing, and that the sentence is contrary to law.

{¶34} The language of R.C. §2929.19(B)(2)(c) became effective March 22, 2019, and to date its application has not received close scrutiny. The relevant portions of this statute provide that:

(B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.

(2) Subject to division (B)(3) of this section, if the sentencing court determines *at the sentencing hearing* that a prison term is necessary or required, the court shall do all of the following:

(Emphasis added.)

{¶35} Subsection (B)(2)(c) sets out the notifications that are to be provided in accordance with the directive of Subsections (B)(1) and (2) which mandates that the court notify the offender at the sentencing hearing:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be

reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

(d) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced, other than to a sentence of life imprisonment, for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a non-life felony indefinite prison term and including a term imposed for any offense of a type described in this division that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. If a court imposes a sentence including a prison term of a type described in division (B)(2)(d) of this section on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(d) of this section that the offender will be supervised under section 2967.28 of the Revised Code after the offender

leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under division (B) of section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(d) of this section and failed to notify the offender pursuant to division (B)(2)(d) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(e) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a term imposed for any such offense that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(e) of this section and failed to notify the offender pursuant to division (B)(2)(e) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(f) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(2)(d) or (e) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term. If a court imposes a sentence including a prison term on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(f) of this section that the parole board may impose a prison term as described in division (B)(2)(f) of this section for a violation of that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term for a violation of that nature if, pursuant to division (D)(1) of section 2967.28 of the Revised Code, the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term and failed to notify the offender pursuant to division (B)(2)(f) of this section regarding the possibility

of the parole board imposing a prison term for a violation of supervision or a condition of post-release control.

(g)(i)1 Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term or, if the offense is an offense for which a non-life felony indefinite prison term is imposed under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, the minimum and maximum prison terms imposed on the offender as part of that non-life felony indefinite prison term, under section 2967.191 of the Revised Code. The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

{¶36} Thus, the trial court must provide the information described in R.C. §2929.19(B)(2)(c) to a defendant at the sentencing hearing to fulfill the requirements of the statute.

{¶37} In this case, the court gave no advisement of any of the requirements set forth in R.C. §2929.19(B) at the sentencing hearing held January 24, 2020 and, therefore, we find that the sentence is contrary to law.

{¶38} Appellant's Third Assignment of Error is sustained.

**IV. and V.**

**{¶39}** Because we reverse and remand the decision of the Licking County Court of Common Pleas for resentencing, we find Appellant's Fourth and Fifth Assignments of Error to be premature.

**{¶40}** Based on the foregoing, we reverse and remand the decision of the Licking County Court of Common Pleas for resentencing consistent with law and this opinion.

By Wise, John, J.

Wise, Earle, J., concurs.

Gwin, J., concurs in part and dissents in part.


JWW/kw 1117

*Gwin, J., concurs in part; dissents in part*

{¶41} I respectfully dissent from the majority's opinion concerning ripeness and Appellant's First and Second Assignments of Error. I concur in the majority's disposition of Appellant's Third and Fourth Assignments of Error.

I.& II.

**Ripeness.**

{¶42} Ripeness reflects constitutional considerations that implicate "Article III limitations on judicial power," as well as "prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). In evaluating a claim to determine whether it is ripe for judicial review, courts should consider both "the fitness of the issues for judicial decision" and "the hardship of withholding court consideration." *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). The Supreme Court has stated that the "basic rationale" of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

{¶43} In determining the "likelihood" that an injury will come to pass, the Supreme Court has made clear that "[o]ne does not have to await consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). For example, in the *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), the Court deemed ripe an action brought by eight major railroads challenging the conveyance of their property to Conrail. Although a reorganization plan had not yet been formulated and a special court had not yet ordered the conveyances, the Court reasoned that "where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into

effect."   Id. at 143, 95 S.Ct. 335. Although not requiring "inevitability," the Court has held that a claim is ripe when it is "highly probable" that the alleged harm or injury will occur.

{¶44}  "Three factors guide the ripeness inquiry: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.' " *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (*quoting Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008)).  *See also, Reno v. Catholic Social Services, Inc.*, 509 U.S.43, 71, 113 S.Ct. 2485, 125 L.Ed.2d 38(1993)(O'Conner, J. concurring)("These are just the kinds of factors identified in the two-part, prudential test for ripeness that *Abbott Laboratories* [*v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681(1967)] articulated. "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  387 U.S. at 149, 87 S.Ct. at 1515. *See  Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581–582, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (*relying upon Abbott Laboratories* test);  *Pacific Gas, supra*, 461 U.S. at 200–203, 103 S.Ct., at 1720–1721 (same); *National Crushed Stone, supra*, 449 U.S. at 72–73, n. 12, 101 S.Ct., at 301–302, n. 12 (same).").  As the court in *Riva v. Commonwealth of Massachusetts* noted,

Although it is a familiar bromide that courts should not labor to protect a party against harm that is merely remote or contingent, *see, e.g., Ernst & Young,* 45 F.3d at 536; Massachusetts *Ass'n of Afro–Am. Pol*ice, 973 F.2d at 20; Lincoln *House v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990), there is some play in the joints. For example, even when the direct application of a statute is open to a charge of remoteness by reason of a lengthy, built-in time delay before the statute takes effect, ripeness may be found as long as the statute's operation is inevitable (or nearly so).

*See, e.g., Regional Rail Reorg. Act Cases,* 419 U.S. 102, 142–43, 95 S.Ct. 335, 357–58, 42 L.Ed.2d 320 (1974). And, even when the direct application of such a statute is subject to some degree of contingency, the statute may impose sufficiently serious collateral injuries that an inquiring court will deem the hardship component satisfied. See Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.2, at 121–22 (2d ed. 1994). In general, collateral effects can rise to this level when a statute indirectly permits private action that causes present harm, or when a party must decide currently whether to expend substantial resources that would be largely or entirely wasted if the issue were later resolved in an unfavorable way. *See, e.g., Pacific Gas*, 461 U.S. at 201, 103 S.Ct. at 1720–21; *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978) 61 F.3d 1003, 1010(1st Cir. 1995).

> In *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Supreme Court held that review of the Hatch Act, which prohibits federal employees from engaging in certain political activities, was non-justiciable with respect to those plaintiff-employees who had not yet engaged in any of the prohibited activity. Subsequently, however, the Court relaxed *Mitchell's* strict approach to justiciability. If the injury is clearly impending, the Court has held that the plaintiffs need not await consummation of the injury to bring their suit. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).

*Signorelli v. Evans,* 637 F.2d 853, 856-857(2nd Cir. 1980).

{¶45} The Ohio Supreme Court has interpreted a "justiciable matter" to mean the existence of an actual controversy, a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 535, 542, 660 N.E.2d 458 (1996). In order for a justiciable question to exist, the "threat" to a party's position "must be actual and genuine and not merely possible or remote." *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 2014-Ohio-2537, 14 N.E.3d 1054, ¶ 17, c*iting Mid–Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶46} In the present case, every individual throughout the State of Ohio who is convicted of a first- or second-degree felony must be sentenced under the Reagan Tokes Law. It is a virtual certainty that a number of those individuals, perhaps a significantly large number, will have the DRC extend his or her incarceration beyond the presumed release date. This is not an abstract or hypothetical case; rather, it is a virtual certainty to occur. Under Reagan Tokes, the question is not *if* a defendant will be denied his or her presumptive release date; but rather *when* a defendant's sentence will be extended.

{¶47} The record before this Court is sufficiently developed to allow us to produce a fair adjudication of the merits of the parties' respective claims. It is not unusual for courts to be asked to pass upon the constitutionality of statute. The constitutional arguments are capable of being addressed in the present appeal.

{¶48} I would call attention to the fact that other jurisdictions have implicitly determined the issue to be ripe for review by addressing the constitutional challenge to the Reagan Tokes provisions regarding future, possible extensions of a prison term beyond the presumed minimum term. The Second District Court of Appeals found the law constitutional in *State v. Barnes*, 2nd Dist. Montgomery No. 28613, 2020-Ohio-4150, *State v. Leet*, 2nd Dist. Montgomery No. 28670, 2020-Ohio-4592, and *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153. The Third District found the law constitutional in *State v. Hacker,* 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048. The Twelfth District Court of

Appeals also determined the law was constitutional in *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, *State v. Rodgers*, 12th Dist. Butler No. CA2019-11-194, 2020-Ohio-4102, and *State v. Morris*, 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103. I further note that the Sixth District has certified the ripeness issue to the Ohio Supreme Court as being in conflict with the decisions from the Second and Twelfth Districts that have found the law constitutional. *State v. Velliquette,* 6th Dist. Logan No. L-19-1232, 2020-Ohio-4855.

{¶49} The hardship to the parties if judicial relief is denied at this stage in the proceedings is real and immense. Now, the indigent appellant, who wishes to raise a constitutional challenge to the law in his or her direct appeal as of right has the assistance of appointed counsel. If, for example, the appellant must wait for two years for the DRC to extend his sentence, both the inmate and the courts will face a myriad of legal hurdles. First, how will the inmate inform the court of his or her desire to appeal the constitutionally of the law? Next, is the inmate entitled to appointed counsel to pursue such an appeal? If the inmate is not, then an incarcerated inmate with limited legal resources and acumen will have to cobble together a highly involved constitutional argument without the assistance of counsel and with extremely limited access to legal resources. It will also become evident that the DRC decision extending the inmate's sentence is not part of the trial court record. In order to establish that the inmate's sentence was in fact extended, will the trial court be required to order the DRC to file its decision with the clerk of courts for inclusion in the trial and appellate court records. Further, if the law is declared unconstitutional years from now, courts will be inundated with writs of habeas corpus, motions and other request for release or resentencing from the hundreds of inmates who were sentenced under the law and not permitted to appeal the constitutionality of the law in the inmate's direct appeal. Finally, the inmate could potentially have been incarcerated perhaps years beyond his release date for the time it takes to decide the issue in the event the law is found to be unconstitutional.

{¶50} In addition, if the law is declared constitutional or unconstitutional, that holding will apply, not just to the single inmate whose appeal is under consideration, but also to *all inmates that have been sentenced under the new law.*

{¶51} It is clear on these facts that Appellant has demonstrated sufficient hardship, and that the question of the constitutionality of the Reagan Tokes Law is fit for our review at this time. I find that nothing is to be gained by postponing for possibly years the unavoidable constitutional challenge to the Reagan Tokes provisions regarding future, possible extensions of a prison term beyond the presumed minimum term.

**The Reagan Tokes Law.**

{¶52} The Reagan Tokes Law (S.B. 201) was enacted in 2018 and became effective on March 22, 2019. The Reagan Tokes Law, "significantly altered the sentencing structure for many of Ohio's most serious felonies' by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after the effective date." *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1.

{¶53} As with any statute enacted by the General Assembly, the Reagan Tokes Law is entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier,* 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, *citing State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶54} The power to define criminal offenses and prescribe punishment is vested in the legislative branch of government and courts may only impose sentences as provided by statute. *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715

(1980); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In the case at bar, the legislature has authorized as a sentence for a felony of the first degree,

(1)(a) For a felony of the first degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

R.C. 2929.14(A)(1)(a).

{¶55} The legislature has authorized as a sentence for a felony of the second degree,

(2)(a) For a felony of the second degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division. (R.C. 2929.14(A)(2)(a)).

{¶56} Indefinite sentences are not new to Ohio. In fact, the preSB2 sentence for a felony of the first degree, the defendant could have received an indeterminate minimum sentence of five, six, seven, eight, nine or ten years up to a maximum of twenty-five years. *See, State v. Davis,* 9th Dist. Summit No. 13092, 1987 WL 25743(Nov. 25, 1987), *citing* former R.C. 2929.11. The pre-SB2 sentence for a felony of the second degree was as follows,

Whoever is convicted of or pleads guilty to a felony other than aggravated murder or murder . . . shall be imprisoned for an indefinite term...

(B)(5) For a felony of the second degree, the minimum term shall be two, three, four or five years, and the maximum shall be fifteen years.

*See, State v. Jenks,* 2nd Dist. Montgomery No. 10264, 1987 WL 20267(Nov. 16, 1987), *citing* former R.C. 2929.1. What is different from prior law regarding indefinite sentences is that the Reagan Tokes Law has created a presumptive release date.

{¶57} The Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first- or second-degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B); R.C. 2929.144(C). Further, under the Reagan Tokes Law, there is a presumption that the offender "*shall be released* from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B) (emphasis added). A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F), which allow the sentencing court to reduce the minimum prison term under certain circumstances. R.C. 2967.271(A)(2). The DRC may rebut the presumption if it determines at a hearing that one or more statutorily numerated factors apply. R.C. 2967.271(C). If DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early

release date for a reasonable period of time, determined and specified by DRC that "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

**Right to a jury trial to determine to rebut the presumptive release.**

{¶58} Wolfe first argues that Reagan Tokes violates his right to have a jury determine any increase in punishment beyond that authorized by the jury's verdict and findings, citing *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 238, 147 L.Ed.2d 435(2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004).

{¶59} In *Apprendi,* a jury convicted the defendant of a gun crime that carried a maximum prison sentence of 10 years. But then a judge sought to impose a longer sentence pursuant to a statute that authorized him to do so if he found, by a preponderance of the evidence, that the defendant had committed the crime with racial bias. *Apprendi* held this scheme unconstitutional. "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum," this Court explained, "must be submitted to a jury, and proved beyond a reasonable doubt" or admitted by the defendant. 530 U. S. at 490, 120 S.Ct. 2348. Nor may a State evade this traditional restraint on the judicial power by simply calling the process of finding new facts and imposing a new punishment a judicial "sentencing enhancement." Id., at 495, 120 S.Ct. 2348. "[T]he relevant inquiry is one not of form, but of effect—does the required [judicial] finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id., at 494, 120 S.Ct. 2348.

{¶60} In *Alleyne v. United States*, 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the United States Supreme Court address, a case concerning mandatory minimum sentences and the Sixth Amendment. In *Alleyne*, the jury relied on the testimony of the victim of an armed robbery that one of the perpetrators possessed a gun. The trial court relied on the same testimony to determine that Alleyne or his accomplice brandished a gun. The testimony was the same, but the findings were different. The jury found that Alleyne

possessed a gun, but made no finding with regard to whether the weapon was brandished. The court, however determined that the gun was brandished. The Supreme Court reviewed the statutory punishment structure, which included a mandatory minimum sentence of five years if a crime of violence was committed while the offender carried a firearm, seven years if the firearm was brandished, and ten years if the firearm was discharged during the crime. 18 U.S.C. 924(c)(1)(A). The crime was otherwise punishable by a term of imprisonment not exceeding 20 years. 18 U.S.C.1951 (a). The court held that where facts were not found by a jury that enhanced the mandatory minimum penalty for a crime, principles of the Sixth Amendment were violated. *Alleyne* at paragraph one of the syllabus. Specifically, "[b]ecause mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Id. *See, State v. Fort,* 8th Dist. Cuyahoga No. 100346, 2014-Ohio-3412, ¶29. However, the majority in *Alleyne* was careful to declare that,

In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial fact-finding, does not violate the Sixth Amendment. *See, e .g., Dillon v. United States*, 560 U.S. 817, ——, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits [,] ... the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U.S., at 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute").

*Alleyne*, 133 S.Ct. at 2163, 186 L.Ed.2d 314.  *See also, State v. Salim,* 5th Dist. Guernsey No. 13 CA 28, 2014-Ohio-357, ¶19.

{¶61}  Under the Reagan Tokes Law, the judge imposes both a minimum and a maximum sentence.  Judicial fact-finding is not required.  In Ohio, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 paragraphs 1 and 11.  The Department of Rehabilitation and Correction ("DRC") is not permitted to extend a sentence imposed by the trial court beyond the maximum sentence imposed by the trial court. Further, the facts which postpone an inmate's release date are facts found as a result of prison disciplinary proceedings, not the underlying crime. To extend Wolfe's argument to its logical end it would be necessary for the courts to invalidate punishment as a result of internal prison disciplinary proceedings entirely, or require all rule infractions to be tried before a jury.

{¶62}  It is evident that *Apprendi* and its progeny have no application in a prison disciplinary setting where the DRC does not have the authority to extend the inmate's sentence beyond the maximum sentence imposed by the trial judge.

**An incarcerated individual does not have a constitutional right to parole or release before serving his entire sentence.**

{¶63}  An inmate has no constitutional right to parole release before the expiration of his sentence.  *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).  The Ohio Adult Parole Authority has "wide-ranging discretion in parole matters." *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28.  *See also, State ex rel. Bailey v. Ohio Parole Board,* 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶9.

{¶64} The Supreme Court has made it clear that a mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest; the prisoner "must, instead, have a legitimate claim of *entitlement* to it." *Greenholtz,* 422 U.S. at 7, 99 S.Ct. at 2104 (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) (emphasis supplied). Moreover, only state law can create this "legitimate claim of entitlement"; the federal constitution protects such claims, but does not create them. "There is no constitutional or inherent right of a convicted person to be conditionally released [i.e., released on parole] before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104. *Accord, Inmates of Orient Correctional Institute v. Ohio State Parole Board,* 929 F.2d 233, 235(6th Cir 1991).

{¶65} However, if state law entitles an inmate to release on parole that entitlement is a liberty interest that is not to be taken away without due process. *See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), where the Supreme Court so held in the context of a statute providing that the Nebraska parole board "shall" release parole-eligible inmates unless one of several factors specified in the statute should be found to exist.

{¶66} As relevant here, R.C. 2967.271(B) states:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that *the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.* (Emphasis added).

{¶67} Also relevant is R.C. 2967.271(C), which states:

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, *the offender shall be released from service of the sentence on the expiration of the*

*offender's minimum prison term or on the offender's presumptive earned early*

*release date, whichever is earlier.* The department may rebut the presumption only

if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the

time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional

rule infractions that involved compromising the security of a state correctional

institution, compromising the safety of the staff of a state correctional institution or its

inmates, or physical harm or the threat of physical harm to the staff of a state

correctional institution or its inmates, or committed a violation of law that was not

prosecuted, and the infractions or violations demonstrate that the offender has not

been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the

infractions and violations specified in division (C)(1)(a) of this section, demonstrate

that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the

time of the hearing, the offender has been placed by the department in extended

restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as

a security level three, four, or five, or at a higher security level.

{¶68} The legislature by choosing the language "there *shall be a presumption* that

the person *shall be released*" and "Unless the department rebuts the presumption, the

offender *shall be released*," within the Reagan Tokes Law has arguably created enforceable

liberty interests in parole. *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96

L.Ed.2d 303 (1987). *See, also, Inmates of Orient Correctional Institute v. Ohio State Adult*

*Parole Authority,* 929 F.2d 233, 236-237(6th Cir. 1991("Although the power to deny parole

is purely discretionary as far as Ohio's statutes are concerned, the state's administrative regulations must also be considered. If Ohio's regulations created an explicit presumption of entitlement to release on parole—as Tennessee's regulations formerly did, *see Mayes v. Trammell*, 751 F.2d 175, 178 (6th Cir. 1984)—or if the Ohio regulations otherwise used "'mandatory language' in connection with 'specific substantive predicates' " for release on parole, *see Beard v. Livesay*, 798 F.2d 874, 877 (6th Cir.1986) (quoting *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)), the regulations alone could create a protected liberty interest."). *Cf. State, ex rel. Bailey v. Ohio Parole Board,* 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶ 10 ("The Revised Code creates an inherent expectation 'that a criminal offender will receive meaningful consideration for parole.'" (*Citing Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 27).

{¶69} "As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)." *Swarthout v. Cooke,* 562 U.S. 216, 219-220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011). Assuming arguendo that the language chosen by the legislature has been created an enforceable liberty interest in parole by the express terms of the Reagan Tokes Act, the question now becomes what process is due in the prison setting.

***Due Process in the prison setting.***

{¶70} When a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and courts will review the application of those constitutionally required procedures. *Swarthout v. Cooke,* 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011).

{¶71} In the context of parole, the United States Supreme Court has held that the procedures required are minimal. In *Greenholtz*, the Court found that a prisoner subject to a parole statute received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. Id. at 16, 99 S.Ct. 2100. "The Constitution," we held, "does not require more." *Swarthout v. Cooke,* 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011).

{¶72} In *Woods v. Telb*, the Ohio Supreme Court made the following observation concerning Ohio law,

Under the [pre-SB2] system of parole, a sentencing judge, imposing an indefinite sentence with the possibility of parole, had limited power or authority to control the minimum time to be served before the offender's release on parole; the judge could control the maximum length of the prison sentence, but the judge had no power over when parole might be granted in between those parameters. The judge had no power to control the conditions of parole or the length of the parole supervision.

\*\*\*

But, we observe that for as long as parole has existed in Ohio, the executive branch (the APA[1] and its predecessors) has had absolute discretion over that portion of an offender's sentence. *See State ex rel. Atty. Gen. v. Peters* (1885), 43 Ohio St. 629, 4 N.E. 81.

\* \* \*

*Woods v. Telb,* 89 Ohio St.3d at 511-512, 733 N.E.2d 1103.

{¶73} Although entitled to the protection under the Due Process Clause, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolfe v. McDonnell,* 416 U.S. 539,

---

[1] Adult Parole Authority

556, 94 S.Ct. 2963, 41 L.Ed.2d 935(1974) (citations omitted).  In *Wolfe,* the United States Supreme Court observed,

In striking the balance that the Due Process Clause demands, however, we think the major consideration militating against adopting the full range of procedures suggested by *Morrissey* [*v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484(1972)] for alleged parole violators is the very different stake the State has in the structure and content of the prison disciplinary hearing.  That the revocation of parole be justified and based on an accurate assessment of the facts is a critical matter to the State as well as the parolee; but the procedures by which it is determined whether the conditions of parole have been breached do not themselves threaten other important state interests, parole officers, the police, or witnesses—at least no more so than in the case of the ordinary criminal trial.  Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.  Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life.  Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock.  Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace.  Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

416 U.S. 539, 561-562, 94 S.Ct. 2963, 41 L.Ed.2d 935.  Indeed, it has been noted,

"[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *[Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224(1974), *overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413(1989)].* As the *Martinez* Court acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." Id., at 404–405, 94 S.Ct. at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez,* additional reason to accord deference to the appropriate prison authorities. See id., at 405, 94 S.Ct. at 1807.

*Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64(1987). "Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." *Wolfe v. McDonnell,* 418 U.S. at 560, 94 S.Ct. 2963, 41 L.Ed.2d 935.

{¶74} The Courts have found therefore, that the following procedures should be accorded to prisoners facing prison disciplinary proceedings: 1). a prisoner is entitled to a review unaffected by "arbitrary" decision-making. *Wolfe,* 418 U.S. at 557-558; (*See,* Ohio Adm. Code 5120-9-08). 2). Advance written notice of the claimed violation. *Wolfe,* 418 U.S. at 563. (*See,* Ohio Adm. Code 5120:1-8-12). 3). A written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolfe,* 418 U.S. at 563. (*See,* Ohio Adm. Code 5120-9-08(M); Ohio Adm. Code 5120:1-11(G)(1)). 4).

Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. *Wolfe,* 418 U.S. at 566. (*See,* Ohio Adm. Code 5120-9-08(E) (3); Ohio Adm. Code 5120-9-08(F)). 5). Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. *Wolfe,* 418 U.S. at 570. (*See,* Ohio Adm. Code 5120-9-07(H)(1)).

{¶75} In the case at bar, in order to rebut the presumptive release date, the DRC must conduct a hearing and determine whether any of the following factors are applicable:

During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated [and] [t]he offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2) and (3).

{¶76} "Although the power to deny parole is purely discretionary as far as Ohio's statutes are concerned, the state's administrative regulations must also be considered." *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority,* 929 F.2d 233, 236-237(6th Cir. 1991). The DRC is required to provide notice of the hearing. R.C. 2967.271(E). Ohio Adm. Code 5120-9-06 sets forth the inmate rules of conduct. Ohio Adm. Code 5120-9-08 sets forth the disciplinary procedures for violations of inmate rules of conduct before the rules infraction board. Ohio Adm. Code 5120-9-10 sets forth the procedures for when and under what circumstances an inmate may be placed in and/or transferred to a restrictive housing assignment. Ohio Adm. Code 5120:1-1-11 sets forth the procedure of release consideration hearings. Thus, an inmate is given notice in advance of the behavior that can contribute or result in an extended sentence and under what circumstance the inmate can be placed or transferred to a restrictive housing assignment. Each procedure employed provides at the least for notice and the opportunity to be heard.

{¶77} Under the Reagan Tokes Law, an inmate is afforded notice and a hearing by R.C. 2967.271(E), which states:

[DRC] shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate.

*See, State v. Guyton,* 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 11; *State v. Leet,* 2nd Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶11 ("Reagan Tokes does not facially violate a defendant's right to procedural due process.")

**Separation of Powers is not violated.**

{¶78} Nor can it be argued that because the DRC can increase a sentence beyond the minimum given by the trial judge, the Reagan Tokes Law usurps judicial authority. As

already noted, the DRC may not increase the sentence beyond the maximum sentence imposed by the trial court. The Ohio Supreme Court has made it clear that, when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence. *See Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20, *citing State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19. Such is the case under the scheme established by the Reagan Tokes Law. *State v. Ferguson,* 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶23. The statute does not permit the DRC to act "'as judge, prosecutor and jury,' for an action that could be prosecuted as a felony in a court of law." *Woods v. Telb,* 89 Ohio St.3d at 512, 733 N.E.2d 1103, *quoting State, ex rel. Bray v. Russell,* 89 Ohio St.3d 132, 135, 729 N.E.2d 359(2000). It should be noted that Bray was charged with and convicted of drug possession and sentenced to an eight-month prison term. While in prison, Bray allegedly assaulted a prison guard in violation of R.C. 2903.13. Pursuant to R.C. 2967.11(B), the Ohio Parole Board imposed a ninety-day bad-time penalty to be added to Bray's original term. Bray's original sentence of eight months for drug possession expired on June 5, 1998, at which time his additional ninety-day penalty began. On June 12, 1998, Bray filed a writ of habeas corpus in the Court of Appeals for Warren County, claiming that Warden Harry Russell was unlawfully restraining him. 89 Ohio St.3d 132, 133, 729 N.E.2d 359. Thus, the Parole Board extended Brey's sentence beyond the maximum sentence the trial court had impose. Wolfe points to nothing within the Reagan Tokes Law that would permit the DRC to extend his sentence beyond the seven and one-half year maximum sentence set by the trial judge.

{¶79} Further, as we have noted, under the Reagan Tokes Law an inmate is afford the due process rights accorded to one who is incarcerated before any increase can occur. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. For as long as parole has

existed in Ohio, the executive branch (the APA and its predecessors) has had absolute discretion over when parole will be granted. *Woods v. Telb,* 89 Ohio St.3d at 511-512, 733 N.E.2d 1103.

{¶80} To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052. And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052. *See, also, Andrus, v. Texas,* __U.S.__, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335(June 15, 2020).

{¶81} Because the Reagan Tokes Law is constitutional, there is no reasonable probability that, but for counsel's failure to challenge the constitutionality of the Reagan Tokes Law the result of the proceeding would have been different.

{¶82} I would therefore overrule Appellant's First and Second Assignments of Error.

III., IV. & V.

{¶83} I concur with the majority's disposition of Appellant's Third, Fourth and Fifth Assignments of Error.

{¶84} In this case, the court gave no advisement of any of the requirements set forth in R.C. 2929.19(B) at the sentencing hearing held January 24, 2020 and, therefore, I would agree that the sentence is contrary to law. I would sustain Wolfe's Third Assignment of Error. Because we reverse and remand the decision of the Licking County Court of Common Pleas for resentencing, I agree Wolfe's Fourth and Fifth Assignments of Error to be premature.