[Cite as *State v. Waggle*, 2021-Ohio-3457.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| PAUL WAGGLE | : | Case No. CT2020-55 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. CR2020-0326


JUDGMENT:     Affirmed in part; remanded in part


DATE OF JUDGMENT:     September 30, 2021


APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

TAYLOR BENNINGTON     JAMES A. ANZELMO
27 North Fifth Street     446 Howland Drive
P.O. Box 189     Gahanna, OH  43230
Zanesville, OH  43701

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant Paul Waggle appeals the November 5, 2020 judgment of the Muskingum County Court of Common Pleas convicting him of two counts of felonious assault, one count of tampering with evidence, one count of kidnapping, and classifying him as a violent offender subject to in-person registration for a period of 10 years. Plaintiff-Appellee is the state of Ohio.

{¶ 2}  On July 18, 2020 Appellant savagely beat and stabbed R.S. as she sat in the passenger seat of his Chevy Impala. R.S. suffered blunt-force trauma to her face and head resulting in fractures to her mandible and missing teeth as well as multiple stab wounds all over her body. Following the incident Appellant showered and then burned the clothing he had been wearing during the assault in his backyard.

{¶ 3}  As a result of these events, on July 28, 2020, the Muskingum County Grand Jury returned a seven-count indictment charging Appellant with three counts of felonious assault, one count of tampering with evidence, two counts of kidnapping and one count of attempted murder.

{¶ 4}  On September 28, 2020, following negotiations with the state, Appellant entered pleas of guilty to two counts of felonious assault, violations of R.C. 2903.11(A)(2), felonies of the second degree, one count of tampering with evidence, a violation of R.C. 2921.12(A)(1), a felony of the third degree, and one count of kidnapping, a violation of R.C. 2905.01(A)(3), a felony of the first degree. The state agreed to nolle the balance of the indictment. Before entering his pleas, Appellant was provided with a plea of guilty packet which included written notification of his obligation to enroll on the violent offender

database. The notification included an explanation of the presumption of his ten-year duty to enroll in the database and the procedure and requirements for rebutting the presumption.

{¶ 5}   Appellant appeared for sentencing on November 2, 2020. The trial court determined one count of felonious assault and kidnapping were allied offenses and the state elected to proceed to sentencing on the kidnapping. Appellant was thereafter sentenced to an aggregate prison term of 16 to 21 years with 10 years being mandatory.

{¶ 6}   On November 16, 2020 an additional hearing was held to address Appellant's placement in the Violent Offender Registry Database (VOD). Both Appellant and the state agreed the matter could be handled "without voiding the sentence and starting over." Transcript of hearing (TH) at 3. Counsel for Appellant then indicated that Appellant understood the requirements of the VOD as the information was contained in his plea form packet but "[w]e were just remiss in doing the paperwork at the sentencing hearing." T.H at 3-4. The trial court then addressed Appellant who stated he understood his duty to enroll in the VOD for a 10-year period based upon his conviction. A nunc pro tunc sentencing entry followed which addressed Appellant's duties as a violent offender and his enrollment in the VOD.

{¶ 7}   Appellant timely filed an appeal and the matter is now before this court for consideration. He raises four assignments of error for our consideration as follow:

I

{¶ 8}   "AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES

VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

II

{¶ 9}   "THE TRIAL COURT UNLAWFULLY ORDERED WAGGLE TO SERVE CONSECUTIVE SENTENCES FOR HIS OFFENSES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

III

{¶ 10} "THE TRIAL COURT ERRED BY ORDERING WAGGLE TO BE PLACED ON THE VIOLENT OFFENDER REGISTRY."

IV

{¶ 11} "PAUL WAGGLE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

I

{¶ 12} Appellant's first assignment of error challenges the constitutionality of the Regan Tokes Act which codified hybrid indefinite prison terms for first and second degree felonies. Appellant challenges the presumptive release feature of the act, R.C. 2967.271, advancing several arguments including it violates his constitutional rights to trial by jury and due process of law, and further violates the constitutional requirement of separation of powers and equal protection.

{¶ 13} R.C. 2967.271 provides in relevant part:

> (B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.
>
> (C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:
>
> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional

institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the

department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for

offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶ 14} Appellant argues these portions of R.C 2967.271 permitting the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. However, as the state points out, appellant has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

{¶ 15} We addressed the concept of ripeness for review in regard to the Regan Tokes Act in *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227:

The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff. Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. Id. at 89, 694 N.E.2d at 460.

In *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued because the Parole Board, pursuant to R.C. 2967.28, could extend his sentence by up to an additional five years for violation of post-release control, the statute was unconstitutional. The Eighth District Court of Appeals concluded because McCann was not currently the subject of such action by the Parole Board, the issue was not yet ripe for review. *Id.* at ¶6.

Likewise, in the instant case, while R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his nine year minimum sentence and potentially continue his incarceration to a term not exceeding thirteen years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review.

{¶ 16} *Downard*, at ¶8-11. See also, *State v. Buckner*, 5th Dist. Muskingum Nos. CT2020-0023 & CT2020-0024, 2020-Ohio-7017; *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501; *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329; *State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631.

{¶ 17} Appellant does not dispute he had not yet been subject to the provisions of R.C. 2967.271. We therefore find here as we did in *Downard*, Appellant's constitutional challenges are not yet ripe for review.

{¶ 18} The first assignment of error is overruled.

II

{¶ 19} In his second assignment of error, Appellant argues the trial court unlawfully ordered him to serve consecutive sentences. We disagree.

{¶ 20} R.C. 2929.14(C)(4) addresses consecutive sentences. That section states:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part

of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 21} When imposing consecutive sentences, a trial court must state the required findings at the sentencing hearing. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. Because a court speaks through its journal, the court should also incorporate its statutory findings into the sentencing entry. *Id.* However, a word-for-word recitation of the language of the statute is not required. *Id.* As long as the reviewing court can discern the trial court engaged in the correct analysis and can determine the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.*

{¶ 22} The trial court here made the appropriate findings and Appellant concedes the same. Transcript of sentencing (TS) 16-17. He argues instead that he was undeserving of consecutive sentences because he has no prior criminal record, is remorseful, and the instant matter involved only one victim.

{¶ 23} First, Appellant's claim that he has no prior record is not borne out by the record. In fact, Appellant had just been released from prison for aggravated assault and domestic violence before he committed the instant crimes. TS 13. Additionally, after Appellant engaged in victim blaming during his sentencing hearing, the trial court specifically found Appellant failed to take responsibility for his actions and demonstrated no remorse. TS 9-12. Based upon these facts as well as the balance of the record, we

cannot say that we clearly and convincingly find that the trial court's order for consecutive service was not supported by the R.C. 2929.14(C) factors or that it was contrary to law.

{¶ 24} The second assignment of error is overruled.

III

{¶ 25} In his third assignment of error Appellant argues the trial court failed to properly inform him, before sentencing, of the procedure and criteria for rebutting the presumption he would be placed in the Violent Offender Registry Database (VOD) and therefore his placement in the same was error. We agree the trial court left out required information regarding the VOD.

*Sierah's Law*

{¶ 26} R.C. 2903.41 et seq., known as Sierah's Law, became effective on March 20, 2019. See 2018 S.B. No. 231. The law created the VOD and requires violent offenders convicted of specified offenses, including kidnapping, to enroll in the database. Sierah's Law creates a presumption that violent offenders enroll in the database. Once enrolled, an offender is required to re-enroll in the database on an annual basis for a minimum of 10 years.

{¶ 27} Enrollment in the VOD further requires an offender to complete and sign an enrollment form providing various information about his or herself as well as finger and palm prints and annual photographs. R.C. 2903.42(C)(2)(a)-(i); R.C. 2903.43(C)(3), (D)(1).  An offender who recklessly fails to enroll, re-enroll, or notify the sheriff of a change of address is guilty of a felony of the fifth degree. R.C. 2903.43(I)(1) and (2).

*The Trial Court's Obligations*

{¶ 28} R.C. 2903.42(A)(1) governs enrollment in the VOD and places certain notification obligations on the trial court before sentencing. Relevant to the instant matter that section states:

> (A)(1) For each person who is classified a violent offender, it is presumed that the violent offender shall be required to enroll in the violent offender database with respect to the offense that so classifies the person and shall have all violent offender database duties with respect to that offense for ten years after the offender initially enrolls in the database. The presumption is a rebuttable presumption that the violent offender may rebut as provided in division (A)(4) of this section, after filing a motion in accordance with division (A)(2)(a) or (b) of this section, whichever is applicable. *Each violent offender shall be informed of the presumption established under this division, of the offender's right to file a motion to rebut the presumption, of the procedure and criteria for rebutting the presumption, and of the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome*, as follows:
>
> (a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the court that is sentencing the offender for the offense that so classifies the person *shall inform the offender before sentencing of the presumption, the right, and the procedure, criteria, and possible outcome.*

{¶ 29} R.C. 2903.42(A)(1)(a), emphasis added.

*The Offender's Obligations*

{¶ 30} Should an offender wish to rebut the presumption of enrollment into the VOD the process for doing so is set forth in R.C. 2903.42(A)(2)(a):

> (2) A violent offender who wishes to rebut the presumption established under division (A)(1) of this section shall file a motion in accordance with whichever of the following is applicable, and shall serve a copy of the motion on the prosecutor:
>
> (a) If the person is classified a violent offender under division (A)(1) of section 2903.41 of the Revised Code, the offender shall file the motion with the court that is sentencing the offender for the offense that classifies the person a violent offender. The motion shall assert that the offender was not the principal offender in the commission of that offense and request that the court not require the offender to enroll in the violent offender database and not have all VOD duties with respect to that offense. The motion shall be filed prior to or at the time of sentencing.

{¶ 31} Thus, while R.C. 2903.43(A)(2)(a) does provide a mechanism to rebut the presumption of enrollment into the VOD, the only way a defendant can successfully

overcome that presumption is if he or she is not the principal offender of the subject offense.

*Sierah's Law as Applied to this Matter*

{¶ 32} At the change of plea hearing in this matter, the state first notified the trial court of the agreement between the parties, and then provided the trial court with "a four-page signed plea agreement * * *. And in addition, there's additional pages consisting of four pages including * * * a notice of violent offender database provisions." Counsel for Appellant then indicated he had reviewed the information with Appellant and answered his questions. Transcript of Plea (TP) 4-5.

{¶ 33} During Appellant's plea colloquy, the trial court made brief mention of the VOD advising Appellant:

> THE COURT: You'll be in the violent offender database, and that's for a period – there's a presumption for a period of ten years. There's some ways to rebut the presumption. But upon your release from prison, you'll have to be registered in the violent offender database. Are you aware of that?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: And [defense counsel] went over that with you?
>
> [APPELLANT]: Yes, Your Honor.

{¶ 34} TP. 11.

{¶ 35} Apparently realizing it had provided inadequate information to Appellant regarding the VOD during his change-of-plea hearing, the trial court held a hearing to remedy the situation. The hearing was held on November 16, 2020, after Appellant was sentenced. At that hearing the following exchange took place:

[The State]: Thank you, Your Honor. We're here on Case No. CR2020-0326 for [Appellant]. The purpose of the hearing is involving [Appellant's] placement on the violent offender registry.

The Court: And will both counsel agree that we can do that without voiding the sentence and going back and staring over? [Counsel for Appellant]?

[Counsel for Appellant]: Yes, Your Honor.

The Court: That all we have to do is go through the violent offender registry.

[Counsel for Appellant]: He was aware. It's in the plea form. He understood his requirements. We just were remiss in doing the paperwork at the sentencing hearing.

The Court: Thank you. I wanted to make sure everybody agreed that's it. That's my belief. I just wanted to make sure there was no objection.

[The State]: State would agree, Your Honor.

The Court: All right. Thank you. [Appellant], you understand that you have a duty to enroll as a violent offender based upon your conviction?

[Appellant]: Yes, Your Honor.

The Court: What your – what your rules and requirements were –

[Appellant]: Yes, sir.

The Court: -- about registering? You also understand, that's for a 10-year period?

[Appellant]: Yes, Your Honor.

The Court: And you also understand that if you fail to register appropriately or don't follow the rules and regulations, that could lead to new and additional jail or prison time?

[Appellant]: Yes, Your Honor.

The Court: Do you have any questions about any of that?

[Appellant]: No, Your Honor.

The Court: [Counsel for Appellant], anything further we need to address?

[Counsel for Appellant]: No, Your Honor.

The Court: Thank you. Based upon that, I do find that you are a violent offender for the purpose of – of the necessity to enroll in the violent offender database. [Appellant], do you have any questions about anything?

[Appellant]: No, Your Honor.

{¶ 36} Transcript of hearing 3-5.

{¶ 37} As Appellant points out, the trial court failed to advise Appellant of the procedure and criteria for rebutting the presumption he would be enrolled in the VOD. In support of his argument, Appellant directs us to *State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926. In that matter, Fabian argued his pleas were not knowingly, intelligently, or voluntarily made because the trial court failed to comply with Crim.R. 11(C)(2)(a) when it failed to advise him of post-release control during his plea colloquy. The majority of the court agreed finding "the trial court's total failure to inform Fabian of postrelease control, which was a part of the maximum penalty, before it accepted the guilty plea, constituted "a trial court's complete failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement." " *Fabian* ¶ 24. quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224 ¶ 22.

{¶ 38} But Appellant does not argue that his plea was rendered involuntary due to the trial court's failure to advise him of the procedure and criteria for rebutting the presumption he would be placed on the VOD, nor does he request his sentence be vacated. Rather, Appellant simply argues the trial court erred in placing him on the VOD.

{¶ 39} Appellant's placement on the VOD is not itself erroneous as it is mandatory based on Appellant's conviction for kidnapping and as the sole offender in the matter. However, the trial court did not fulfill all of its notification requirements.

{¶ 40} The Ohio General Assembly chose the term "shall" when describing the trial court's obligation to inform a violent offender of the procedure and criteria for rebutting the presumption that the offender will be enrolled in the VOD. R.C 2903.42(A)(1)(a). It is

well established that "shall" means must when used in a statute. *State v. Noling*, 153 Ohio St.3d 108, 2018-Ohio-795, 101 N.E.3d 435, ¶ 64. The use of the word shall "connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *Id.*, citing *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.2d 1242, ¶ 13.

{¶ 41} Because the sentencing court was required to inform Appellant of the procedure and criteria for rebutting the presumption he would be placed on the VOD and possible outcome, we vacate only Appellant's placement on the VOD and remand the matter to permit the proper advisements to be made.

{¶ 42} The third assignment of error is sustained.

IV

{¶ 43} In his final assignment of error, Appellant argues his counsel rendered ineffective assistance. We disagree.

{¶ 44} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 45} Appellant makes two arguments under this assignment of error. First he argues trial counsel was ineffective because he failed to argue against the Regan Tokes Act. As we have found in the first assignment of error, however, the matter is not yet ripe for review. We therefore reject Appellant's argument.

{¶ 46} Next Appellant argues his counsel was ineffective for failing to object to his placement on the VOD. This argument has been rendered moot by our resolution to the third assignment of error.

{¶ 47} The judgment of the Muskingum County Court of Common pleas is affirmed in part. Appellant's placement on the Violent Offender Registry Database is vacated and remanded for proceedings consistent with this opinion.

By Wise, Earle, J.,

Delaney, J. concur.

Gwin, P.J. concurs in part, dissents in part.

EEW/rw

*Gwin, P.J., concurs, in part and dissents in part*

{¶48} I concur in the majority's disposition of Appellant's Second, Third, and Fourth Assignments of Error.

{¶49} I respectfully dissent from the majority's opinion concerning ripeness and Appellant's First Assignment of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio-5501.

{¶50} I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Act is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table) The conflict cases are *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Barne*s, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *See also, State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal accepted on Appellant's Proposition of Law No. II*, *State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*). The Ohio Supreme Court heard oral arguments on *Maddox* on June 29, 2021.