[Cite as *State v. Goss*, 2025-Ohio-3136.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          : CASE NO. 25CA1210

    v.                           :

JOSEPH GOSS,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for appellant[1].

Aaron E. Haslam, Adams County Prosecuting Attorney, West Union, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:8-27-25
ABELE, J.

{¶1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence. Joseph Goss, defendant below and appellant herein, raises one assignment of error for review:

> "THE TRIAL COURT ERRED TO THE PREJUDICE OF MR.
> GOSS BY IMPOSING A SENTENCE THAT WAS CONTRARY
> TO LAW."

---

[1] Different counsel represented appellant during the trial court proceedings.

{¶2} An Adams County Grand Jury returned an indictment that charged appellant with one count of domestic violence in violation of R.C. 2919.25(A), a third-degree felony, with the finding that appellant has a prior felony domestic violence conviction in Warren County in Case No. 17CR32944 and prior misdemeanor domestic violence convictions in the Lebanon Municipal Court in Case Nos. CRB1400549 A/B.  After an October 31, 2024 hearing, appellant entered a guilty plea to an amended domestic violence count in violation of R.C. 2914.25(A), a fourth-degree felony.

{¶3} The trial court held a December 18, 2024 sentencing hearing.  According to the parties' plea agreement, appellee made no sentencing recommendation.  Counsel acknowledged appellant's prior convictions, the victim spoke on appellant's behalf and requested the court to terminate the protection order "because I do love him very much and I do see a future with him.  He is the love of my life and we, everything just got outta hand that evening."  The victim minimized her injuries and blamed her mother for calling the police.  When offered the opportunity to make a statement of allocution, the court asked appellant "how did we get here," to which appellant stated, "things were made up about me."  When asked why he pleaded guilty, appellant stated, "Uh, in a way I feel like

I, uh, scare tactic in a way.  I feel like I was made to feel nervous. . . [b]y just the situation, the way it was brought to me, laid on the table.  The jury sees your history either automatically gonna throw you in the pen."

{¶4}  When asked if he felt like he committed this domestic violence offense, appellant stated, "I do not," but appellant declined to withdraw his plea.  The trial court also pointed out that while on bond, appellant tested positive for methamphetamine. Appellant, however, maintained he had tried methamphetamine for the first time the day he tested positive.  The trial court then continued the hearing to allow appellant to "familiarize yourself with the truth."

{¶5}  At the January 16, 2025 second sentencing hearing, the trial court observed that appellant "failed to . . . report for testing as he was required to.  He was also found in the presence of the victim. . . [w]hich he was absolutely to have no contact with.  He had negative contact with law enforcement. . . and he refused to answer the door when he was with the victim . . . during a bond check. . . I let him out on O.R. bond on October the 31st."

{¶6}  Appellant's counsel indicated that ten days after the last hearing occurred, law enforcement discovered appellant in a

vehicle with the victim that resulted in a domestic violence charge and a weapon under disability charge in Clinton County. Counsel stated that because appellant appeared to suffer a mental health crisis, law enforcement transported him to a mental health facility where he stayed for approximately six days. The victim accompanied appellant to his home, and, when law enforcement stopped to check on him he refused to answer the door.

{¶7} Appellant's father spoke at the sentencing hearing and explained that his son suffers from "serious depression issues" that "need to be addressed by professionals" and that he has tried to speak to him and give him guidance over the years. The court expressed its frustration that it would prefer to avoid incarceration, but appellant refused to follow court orders to avoid the victim and to refrain from using illegal drugs.

{¶8} The trial court stated that it had considered the oral statements, victim impact statements, the PSI, the R.C. 2929.11(A) principles and purposes of sentencing, and the R.C. 2929.12 recidivism factors. The court recited the facts of the offenses and reviewed appellant's prior criminal record, including newly pending Clinton County charges in which appellant was in the company of the victim with a weapon. The court noted that

appellant "does not believe he has any drug problem, and he shows no genuine remorse" even when he violated his bond and tested positive for methamphetamine. The court further pointed out that appellant is not amenable to community control, given that appellant violated the conditions of his bond and failed to avoid the victim.

{¶9} Consequently, the trial court sentenced appellant to (1) serve a 16-month prison term, (2) serve an optional 2-year postrelease control term, (3) pay a $500 fine, (4) submit to DNA testing, and (5) pay costs. This appeal followed.

I.

{¶10} In his sole assignment of error, appellant asserts that the trial court erred to his prejudice when it imposed a sentence that is contrary to law. In particular, appellant contends that the trial court did not consider the R.C. 2929.11 and R.C. 2929.12 factors, but instead relied on improper information when it determined whether a prison sentence was appropriate. Appellant argues that although appellee agreed not to take a position at sentencing and the victim asked the court not to incarcerate appellant, the trial court "went against the wishes of everyone including its own statements during the plea hearing and imposed a

6

prison sentence."

{¶11} Appellant also claims that the trial court stated that, absent the victim's statements at the previous hearing, the court would have imposed a community control term rather than incarceration. At the sentencing hearing, the trial court noted its frustration with the situation, and observed that the victim blamed her mother for pressuring her into calling the police, and stated that she wanted to have a future with appellant. The court stated:

> I can't help to think that with the exception of trying to hit a grand slam, um, at the last sentencing hearing, which caused us to stop if the victim, uh, wouldn't have come in with this extraordinary story if it was the mother's problem and we wouldn't have delayed the hearing and try and do other things that he probably would've been on community control. Um, but, uh, the efforts to, to do all these things, uh, which was, um, a furtherance of the, uh, the charade, uh, that the court sees of the truth that, um, we ultimately hear, and it flushed itself out within, uh, just a few weeks. Uh, that uh, hey, that would've been a bad idea, uh, for the court.. .

## Standard of Review

{¶12} When reviewing felony sentences, appellate courts apply the standard of review outlined in R.C. 2953.08(G)(2). *State v. Prater*, 2019-Ohio-2745, ¶ 12 (4th Dist.), citing *State v. Graham*, 2018-Ohio-1277, ¶ 13 (4th Dist.). Under R.C. 2953.08(G)(2), "[t]he

appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶13} "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Thus, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law if the appellate court concludes, by clear and convincing evidence, that the record does not support the sentence.

R.C. 2929.11 provides:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the three overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

**{¶14}** Moreover, R.C. 2929.12 sets forth several factors for the court to consider in exercising discretion in sentencing:

(A) . . . the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct, the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism, the factors set forth in division (F) of this section pertaining to the offender's service in the armed forces of the United States, and the factors set forth in division (G) of this section relating to Alford pleas and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.

**{¶15}** The Supreme Court of Ohio has summarized the

applicability of R.C. 2929.11 and 2929.12 as follows:

> In Ohio, two statutory sections serve as a general guide for every sentencing. First, R.C. 2929.11(A) provides that the overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." To achieve these purposes, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id.* The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). * * *
>
> Second, R.C. 2929.12 specifically provides that in exercising its discretion, a trial court must consider certain factors that make the offense more or less serious and that indicate whether the offender is more or less likely to commit future offenses. * * *
>
> [A]n offender's conduct is considered less serious when there are "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C)(4). R.C. 2929.12(C) and (E) also permit a trial court to consider "any other relevant factors" to determine that an offense is less serious or that an offender is less likely to recidivate.

*State v. Day*, 2019-Ohio-4816, ¶ 15 (4th Dist.), quoting *State v. Long*, 2014-Ohio-849, ¶ 17-18. Moreover, this court has held that, generally, a sentence is not contrary to law if a trial court considered the R.C. 2929.11 purposes and principles of sentencing, as well as the R.C. 2929.12 seriousness and recidivism factors, properly applied post-release control, and imposed a sentence

within the statutory range. *Prater* at ¶ 20; *Graham* at ¶ 16; *State v. Perry*, 2017-Ohio-69, ¶ 21 (4th Dist.); *State v. Bowling*, 2020-Ohio-813, ¶ 7 (4th Dist.); *State v. Bell*, 2024-Ohio-1502, ¶ 31 (4th Dist.). Finally, neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record. *State v. Jones*, 2020-Ohio-6729, ¶ 20, citing *State v. Wilson*, 2011-Ohio-2669, ¶ 31. However, a sentence is contrary to law if the trial court fails to consider the R.C. 2929.11 purposes and principles of felony sentencing and the R.C. 2929.12 sentencing factors. *State v. Neal*, 2015-Ohio-5452, ¶ 55 (4th Dist.).

{¶16} In the case sub judice, at the sentencing hearing the trial court stated that it considered the record, oral statements, victim impact statements, and the presentence investigation report (PSI). Further, the trial court referred to the R.C. 2929.11 purposes of felony sentencing and stated that it had "balance[ed] the seriousness of recidivism factors of R.C. 2929.12." Moreover, the court's decision stated that it had considered both the R.C. 2929.11 and R.C. 2929.12 sentencing factors. As we recently noted in *Bell*, *supra,* 2024-Ohio-1502 (4th Dist.), a trial court's statement in its sentencing journal entry that it considered the

required statutory factors is alone sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *Bell* at ¶ 32, citing *State v. Smith*, 2023-Ohio-681 (4th Dist.), *State v. Sutton*, 2015-Ohio-4074, ¶ 72 (8th Dist.), citing *State v. Clayton*, 2014-Ohio-112, ¶ 9 (8th Dist.).

**{¶17}** As in *Bell,* appellant asserts that the trial court relied on extraneous factors. For example, appellant contends that the trial court took issue with the victim's statements made at the prior hearing in which she minimized appellant's conduct and blamed her mother for exacerbating the situation. In particular, appellant points to the trial court's statement:

> I can't help to think that with the exception of trying to hit a grand slam, um, at the last sentencing hearing, which caused us to stop if the victim, um, wouldn't have come in with this extraordinary story if it was the mother's problem and we wouldn't have delayed the hearing and try and do other things that he probably would've been on community control. Um, but, uh, the efforts to, to do all these things, uh which, um, a furtherance of the uh, the charade, uh, that the court sees of the truth that, um, we ultimately hear, and it flushed itself out within, uh, just a few weeks. Uh, that uh, hey, that would've been a bad idea, uh, for the court.

The court pointed to the prior hearing in which the victim testified that she "wanted to have the protection order dropped" because "I do love him very much and I do see a future with him."

The victim stated, "[h]e is the love of my life and we, everything just got outta hand that evening." She continued that after her mother picked her up, she told the victim, "I'm either calling the cops or I'm going to either kill him or be [sic.] his ass." The victim continued that she "literally had no option," and "she like forced me pretty much into getting this . . . restraining order." We note that it is not unusual in a domestic violence case for a victim to recant or otherwise minimize the behavior of the abuser. *See State v. Thomas,* 2003-Ohio-5746, ¶ 11 (1st Dist.)(expert testified that in her experience, many victims recant and minimize the abuse; in as many as 85% of the cases she handled, victims recanted due to factors that include improvements in the relationship, increased danger to women if they testify against their abusers, and that many abusers tend to "behave" between the time of the abuse and the time of trial.) In addition, the court did not state that but for the victim's testimony, the court "would have" sentenced appellant to community control; the court stated that it "probably would've been" community control. However, in the interim, appellant aptly demonstrated his continued refusal to comply with orders from the court to avoid contact with the victim. Further, appellant's new domestic violence and weapon under

disability charges in Clinton County constitute a violation of his bond.

**{¶18}** The trial court also considered appellant's criminal history, that included a 2002 Warren County Court attempt/assault conviction, a 2003 Lebanon Municipal Court theft conviction, a 2005 Warren County Court contempt of court conviction, two 2007 Warren County Court receiving stolen property convictions, a 2009 Lebanon Municipal Court first-degree aggravated burglary conviction, a 2010 Warren County Court second-degree felony robbery conviction, two 2014 first-degree misdemeanor Lebanon Municipal Court domestic violence convictions, a 2014 first-degree misdemeanor Lebanon Municipal Court domestic violence conviction, a 2017 first-degree misdemeanor Lebanon Municipal Court TPO violation, a 2017 first-degree misdemeanor Lebanon Municipal Court domestic violence conviction, a 2017 Warren Common Pleas Court fourth-degree felony domestic violence conviction, and a December 28, 2024 Clinton County pending domestic violence and having a weapon under disability charge.

**{¶19}** A trial court "has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing

14

maximum or more than minimum sentences." *State v. Chapman,* 2022-Ohio-2853, ¶ 76 (4th Dist.), citing *State v. Wolfe*, 2020-Ohio-5501, ¶ 61-62 (J. Gwin, concurring), quoting *State v. Kalish*, 2008-Ohio-4912; *see also Neal*, *supra,* 2015-Ohio-5452, ¶ 61 (4th Dist.), citing *State v. Johnson*, 2014-Ohio-2308, ¶ 8 (2d Dist.), citing *State v. King*, 2013-Ohio-2021, ¶ 45 (2nd Dist.). Thus, courts have "refused to find that a sentence is contrary to law when the sentence is in the permissible range and the court's journal entry states that it 'considered all required factors of the law' and 'finds that prison is consistent with the purposes of R.C. 2929.11.' " *Neal,* citing *State v. Williams*, 2014-Ohio-1618 ¶ 17 (8th Dist.), quoting *State v. May*, 2013-Ohio-2697, ¶ 16 (8th Dist.).

{¶20} After our review in the case sub judice, we believe that the trial court complied with all pertinent sentencing requirements, reviewed and considered the presentence investigation report, parties' arguments, victim impact statements and sentencing hearing testimony, and arrived at a sentence that falls within the statutory range. In particular, the trial court cited: (1) appellant's bond violation when he tested positive for methamphetamine, (2) his new Clinton County domestic violence

charges, and (3) his continued failure to avoid the victim. Consequently, we conclude that the record supports the trial court's sentence and the sentence is not contrary to law.

{¶21} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

16

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                         Peter B. Abele, Judge

NOTICE TO COUNSEL

17

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.